129 Cal.Rptr.2d 102 (2003)
105 Cal.App.4th 202
The PEOPLE, Plaintiff and Respondent,
v.
Alexander M. HILGER, Defendant and Appellant.
No. B156790.
Court of Appeal, Second District, Division Eight.
January 9, 2003.
Review Granted March 19, 2003.
Rachel Lederman, San Francisco, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka and Marc E. Turchin, Senior Assistant Attorneys General, and Lisa J. Brault, Deputy Attorney General, for Plaintiff and Respondent.
RUBIN, J.
Appellant Alexander M. Hilger appeals from the court's order denying him custody credits against his prison sentence. After review, we reverse and remand for calculation of such credits.

PROCEDURAL AND FACTUAL BACKGROUND
In June 1998, police arrested appellant for assaulting his mother with a deadly weapon, an offense to which he pleaded guilty. (Pen.Code, § 245, subd. (a)(1).) On December 4, 1998, the court sentenced him to the upper term of four years in state prison, but suspended the sentence and placed him on three years' probation. The court ordered appellant as a condition of probation to complete a one-year residential substance abuse treatment program. In addition, the court required appellant to waive credit for the 169 days he spent in custody between his arrest and sentencing. It told him, "You are to receive no credit for the actual time you have been serving in the county jail up to this point in this case."
Two months later, the court revoked appellant's probation and remanded him to custody following his ejection from the *103 treatment program on January 29, 1999. At appellant's subsequent probation revocation hearing on April 23, 1999, the court reinstated probation, conditioned on appellant's serving an additional year in county jail without credit for his almost two months in the treatment program in December and January. The court did, however, credit appellant for the 78 days he spent in custody between his discharge from the treatment program and the probation revocation hearing.
In January 2001, appellant's probation was again revoked and he was returned to custody on February 7, 2001. The court reinstated probation at appellant's April 4, 2001, probation revocation hearing, conditioned on his waiving credit for the time spent in custody and serving an additional year in county jail. The court told appellant, "You will be waiving any and all credits for any time you've served thus far."
Five months later on September 14, 2001, appellant violated probation and was remanded to custody yet again after testing positive for alcohol and cocaine. Apparently in anticipation of going to prison for his latest violation, appellant moved to receive credit in prison for all the time he had spent in local custody, which he calculated as 362[1] days. He asserted he was entitled to credit because he had believed his waiver of credits applied only against county jail time, not state prison time.
On January 15, 2002, the court terminated probation and remanded appellant to state prison to serve his upper-term, four-year sentence. It denied his motion for custody credits, finding he had waived them. Appellant thus lost credit for 169 days spent in custody between his June 19, 1998, arrest and December 4, 1998, sentencing; 57 days in his first treatment program between sentencing and his termination from the program on January 29, 1999; 78 days in custody between his ejection from the treatment program and reinstatement of probation on April 23, 1999; and 58 days in custody between February 5, 2001, and April 4, 2001, for his penultimate probation violation. It did, however, award him 286 days actual custody and 142 good time/work time credits for his time in custody between April 4, 2001the date of his second and final waiverand termination of probation on January 15, 2002. This appeal followed.

DISCUSSION
When circumstances warrant, a court may sentence a felon to probation instead of prison, but condition the probation on serving time in county jail. Such a county jail sentence cannot, however, exceed one year. (Pen.Code, § 19.2.)[2] If the defendant thereafter violates probation, the court may exercise its discretion to reinstate probation conditioned on the defendant's serving additional jail timethe rub being that the time the person had already spent in custody ordinarily counts against the one-year cap on county jail time. (§ 2900.5 [prisoners entitled to credit for time spent in custody].)
Courts (and defendants) recognize the potential downside of a probationer's accruing custody credits against the one-year cap: It could force a court to remand a defendant to prison for a probation violation *104 even if both the court and defendant preferred that the additional time be spent in county jail. To avoid such an undesired result, the seminal case of People v. Johnson (1978) 82 Cal.App.3d 183, 147 Cal. Rptr. 55, fashioned the remedy of permitting a probationer to waive his custody credits. (Id at p. 188, 147 Cal.Rptr. 55.)
A so-called "Johnson waiver" must be knowing and intelligent, meaning the probationer understands the waiver's effect on his possible eventual sentence. (People v. Ambrose (1992) 7 Cal.App.4th 1917, 1922-1923, 9 Cal.Rptr.2d 812; People v. Johnson, supra, 82 Cal.App.3d at p. 188, 147 Cal.Rptr. 55.) Appellant contends his waivers were invalid because he did not know they applied to his suspended four-year prison sentence. In the circumstances of this case, we agree.
The courts of appeal are split on what a defendant must show to prove a waiver was not knowing and intelligent.[3] One line of decisions, spawned by People v. Burks (1998) 66 Cal.App.4th 232, 77 Cal.Rptr.2d 698, requires a defendant expressly to state on the record that his waiver is limited and applies only to county jail time, not state prison; otherwise, the waiver applies to a prison term as well. (Id. at p. 236 & fn. 3, 77 Cal.Rptr.2d 698.) A second line of decisions adopts a case-by-case approach, looking at the particular facts to determine whether they support the conclusion that the defendant knew the waiver applied to prison time. (See, e.g., People v. Harris (1987) 195 Cal.App.3d 717, 725, 240 Cal. Rptr. 891 [adopting a fact specific analysis in determining whether defendant knew he was waiving credits against any eventual prison sentence].) For example, People v. Ambrose, supra, 7 Cal.App.4th 1917, 9 Cal. Rptr.2d 812, found a waiver where the court specifically told the defendant he would not receive any credit against a prison sentence if he violated probation. (Id. at pp. 1922-1923, 9 Cal.Rptr.2d 812.) And People v. Salazar (1994) 29 Cal. App.4th 1550, 35 Cal.Rptr.2d 221, found a waiver because the court informed the defendant he was waiving credits "for all time and for all purposes." (Id at pp. 1553-1554, 35 Cal.Rptr.2d 221.)
None of these decisions establish, however, what appellant must show when, as here, the waiver causes him to serve more time in custody than an offense's upper term. (See People v. Burks, supra, 66 Cal.App.4th at p. 234, 77 Cal.Rptr.2d 698 [does not discuss that two-year sentence for stalking is mid-term]; People v. Salazar, supra, 29 Cal.App.4th at p. 1552, 35 Cal.Rptr.2d 221 [does not discuss that five-year sentence for sale of cocaine is upper term]; People v. Harris, supra, 195 Cal. App.3d at p. 719, 240 Cal.Rptr. 891 [does not discuss that three-year sentence for assault with a deadly weapon is midterm].) The decisions' silence in describing the sentences as low, mid-, or upper term reveals their analyses did not consider the implications of a defendant's serving more time for an offense than the Legislature has directed.[4]
For guidance on waivers that yield sentences longer than the legislatively mandated *105 upper term, we turn to our Supreme Court's recent decision in People v. Johnson (2002) 28 Cal.4th 1050,123 Cal.Rptr.2d 700, 51 P.3d 913 ("Johnson II"). There, the trial court expressly warned the defendant that his waiver of custody credits applied to a prison sentence. (Id. at pp. 1052-1053, 123 Cal.Rptr.2d 700, 51 P.3d 913.) Because of the waiver, when the court later sentenced the defendant to the upper term, he served more time in jail and prison than the maximum sentence authorized by the Legislaturean outcome our Supreme Court upheld. Johnson II thus stands for the proposition that a court which accepts a waiver of custody credits from a defendant who faces potentially more than the upper term must explicitly tell the defendant that the waiver applies to any future prison sentence.
We believe Johnson II establishes a ranking of a defendant's penal interests which trial courts must obey. Typically, a Johnson-waiver makes only the waiver of time explicit; ordinarily unmentioned is the place of confinement, be it county jail or state prison. This choice between what is said and unsaid reflects that hard time is hard time wherever one serves it. The emphasis on time, and de-emphasis of place, serve the useful goal of encouraging a defendant to focus on his waiver's important temporal consequences, not its secondary geographical ones.
But sometimes a geographical consequence implies a temporal consequence when what is at stake is the choice between upper, mid-, and low term sentences, a sentencing scheme characteristic of state prison, but not county jail. And in Johnson II, a particularly noteworthy temporal consequence loomed over the defendant: a sentence longer than what the Legislature envisioned as the most severe proper sentence. Consistent with the ranking of penal interests implicit in Johnson II, a defendant must know those temporal consequences. Ideally, the trial court should explicitly warn the defendant he could serve more time than the upper term. Less ideally because more indirect, but still acceptable because it would get the job done, the court should remind him that the waiver applies to prison, not just county jail. Such a reminder ought to trigger further inquiry by defense counsel into the range of prison sentences the defendant faces, thereby honoring Johnson II's ranking of penal interests. Because the trial court in this case did not tell appellant either that he might serve more than the upper term or that his waiver applied to prison time, he was ignorant of the temporal consequences of his waiver, making it unknowing and unintelligent. Thus, we reverse.

DISPOSITION
The order is reversed and the matter is remanded to the trial court for resentencing after calculation of custody credits under section 2900.5.
We concur: COOPER, P.J., and BOLAND, J.
NOTES
[1] In fact, he calculated his time in custody as 369 days, but he appears to have double-counted seven days he spent in Metropolitan State Hospital between January 29, 1999, and February 5, 1999, by also including those days in the 78 days' credit he sought between January 29 and the April 23, 1999, probation revocation hearing.
[2] All further undesignated section references are to the Penal Code.
[3] Indeed, two cases involving the very issue we face in this case are currently pending before the California Supreme Court in People v. Arnold, review granted June 12, 2002, No. S106444 and People v. Jeffrey, review granted June 12, 2002, S105978.
[4] The one exception is People v. Ambrose, supra, 7 Cal.App.4th 1917, 9 Cal.Rptr.2d 812. The Court of Appeal identified the sentence as upper term, but, like the other decisions, did not discuss the implications of serving more time than the Legislature mandated. Accordingly, we cannot look to it for guidance in deciding our case here, but we note its resultupholding a waiver following the court's explicit warning that the waiver applied to prison timeis consistent with our analysis.